## COMMON PLEAS AND PROBATE COURTS OF OHIO,

ALSO OF THE

## SUPERIOR COURT OF CINCINNATI,

SPECIAL AND GENERAL TERMS.

---

(Lucas County, Ohio, Court of Common Pleas.)

### EDWARD QUIGLEY v. MICHAEL H. MURPHY.

*Husband and wife—Agreement of separation—Support of children—Duties and Liabilities of Husband—*

1. Where a husband and wife having children agree upon a separation, and by the terms of the agreement provided that the children are to have a home for the present with a third person, and that the wife shall not remove the children from the control of such third person without the consent of the husband, the husband has the right to remove the children from such home at any time without the consent of the wife or of such third person.

2. Where a father agrees with a party to pay a sum named for the board and care of his children, and the father furnishes no clothing to the children, the party supplying the children under the agreement with board and care, can recover for such clothing as he may furnish that is reasonably fit and suitable for such children. The test of what clothing is so reasonable, etc., is what the children of other parents in like situation in life and of like financial ability commonly have.

3. To terminate such an arrangement for the board and care of his children the father may serve notice upon the person providing the same of the termination of the agreement, (if there is no provision in the agreement to the contrary), but if after such a notice the father allows and permits the children thereafter to remain, and board and care are continued to be furnished to the children, the father making no effort to remove the children, then he will be liable for such keeping.

4. It is primarily the duty of the father to provide reasonably for the support and care of his minor children, if he is able to do so, both by natural law and the statutes of Ohio. The necessity for and the proper amount of care, clothing and support to be furnished the children are, under ordinary circumstances, left by law to the discretion of the father, subject, however, to the rule that such discretion must not be abused to the injury of the children. And when the father, being able, neglects or refuses to so provide for his children in such wise as to render it necessary for some other person to do so, then the law implies a promise or obligation on the part of the father to pay for the proper amount and kind of care, clothing and support of such minor children.

5. Where a husband and wife enter into an agreement of separation, such an agreement will not be construed to deprive their minor children of their right of support, maintenance and culture. While the discretion is with the father primarily to select the method and way in which he shall provide therefor, the fundamental rule relative to such matters is, that the welfare of the children is paramount to the claims of either parent, and neither the husband nor wife can be permitted, in the exercise of their discretion, to so act as to injure a minor child in its health, comfort, enjoyment or future prospect in life.

6. In determining whether a parent has properly exercised the discretion resting in him to provide for his minor children, all the conditions and circumstances under which the children were placed, such as their ages, health, physical condition, manner in which they had been accustomed to live, care which they before had received, character of the place to which they are taken for keeping, treatment there, etc., are to be considered in connection with the comfort, health and physical well-being of the children in the present, and their prospect or happy and useful lives in the future.

VOL. IV.—*1 [COPYRIGHTED.]

7. Where a husband and wife have separated, and the husband has exercised his discretion to provide a place for their minor children, the presumption is that the same is proper and sufficient; the burden of proof is upon a party alleging the contrary.

8. Where a husband and wife have separated and the husband has not made proper provision for their infant children, and the children are of such tender age as not to have the ability to act for themselves, the wife has the right to provide for their support and maintenance until the husband does so, and for the reasonable expense of so doing the husband is liable to the person furnishing the same at the wife's request.

9. Where a husband and wife separated, and the husband took their children to a convent, and the wife removed them therefrom to the home of her parents, where, at her request, they were supported and maintained, and the husband knew, or had full means of knowing, of the support and maintenance so furnished, and permitted them without objection, there to remain, receiving such care and maintenance, without providing other proper or suitable maintenance and support, the question of the liability of the father, upon an implied promise to pay the fair and reasonable value of such support and maintenance, is for the jury.

---

Charge to the jury.

PRATT, J.,

Gentlemen of the Jury:—The plaintiff in this case, Edward Quigley, brings this action against the defendant, Michael H. Murphy, and seeks to recover from said defendant, the father of two children, alleged in the petition to be of the ages respectively one of ten years in August, 1894, and the other of seven years in February, 1894, for the board, nursing, care, clothing and medicines which he claims that he furnished to the defendant's said children during a period of two hundred and twenty weeks, between the thiry-first day of December, 1889, and the first day of May, 1894; and plaintiff asks for judgment against the defendant for the sum of $2200 and interest from May 1st, 1894. The petition in which plaintiff sets forth his claim alleges that Claudia Q. Murphy is the wife of the defendant Murphy, and the mother of the children in question. That on or about December 31, 1889, the defendant and his said wife entered into an agreement, by the terms of which they were to live separate and apart, but neither to forfeit any right as regards their children, and that such children should have their home with the plaintiff and his wife. It is also alleged that the defendant agreed that the plaintiff should be paid $5.00 a week for their board. The petition also alleges that the defendant entirely neglected and failed to furnish the necessaries of life—the necessary clothing, care, nursing or medicines, for these children, and that by and with the authority of the defendant's wife—Claudia Q. Murphy—acting for and on behalf of her husband, he did during two hundred and twenty weeks supply the said children with their board and other necessaries of life, to-wit: care, clothing and medicine, and he alleges the value of the boarding, clothing and medicines to be $10.00 per week.

The defendant files his answer to the petition—which is designated as the second amended petition in the case—and the one on which the claim now under consideration is being tried, and he answers it denying each and every allegation in the petition except as to certain matters which he admits; and it is proper that I should call your attention to the matters which he admits in his answer, because whatever is admitted by one party or the other you take as being conceded by him, and therefore not necessarily in issue. After this general denial, the admissions that he makes are as follows: that he is the father of the two children in question, and that Claudia Q. Murphy is the wife of the defendant. He further admits that on or about the 31st day of December, 1889, the said defendant entered into an agreement with his wife, Claudia Q. Murphy, un-

der and by the terms of which they were to live separate and apart, and that said contract in no way changed the rights of either of said parents as to their said children; and he further admits that it was further contracted by the terms of said agreement that the children should temporarily, and for no fixed or stated time, have their home with the plaintiff and his wife, Eliza Quigley.

He further says that after the making of said agreement between the defendant and his said wife, Claudia Q. Murphy, and on or about the 1st of January, 1890, this defendant left his children with the plaintiff, who agreed to board them for the sum of $20.00 per month.   That under and in pursuance of said agreement between plaintiff and said defendant, said children remained with the plaintiff for a little over two months, until on or about the 5th day of March, 1890, and then he alleges that, "On or about the 5th day of March, 1890, this defendant, with the full knowledge, acquiescence and consent of the said Claudia Q. Murphy, placed his children in the Ursuline Convent of the Sacred Heart in the city of Toledo, Ohio, and arranged for their remaining in said convent permanently; that said convent is a Catholic institution, and that said defendant and his wife are both members of said church; that at said convent said children were well and properly cared for and educated; that said convent was in every respect a proper place for said children."

Then he further alleges that some time afterward, to-wit, on or about April 2nd, 1890, the plaintiff and the said Claudia Q. Murphy, acting in conjunction with said plaintiff and in no wise thereunto authorized by the defendant, unlawfully, fraudulently, and by deception practiced upon the Mother Superior and other inmates of said convent, and without the knowledge or consent of said defendant, took the said children from said convent, and defendant says that whatever, if any, nursing, care, clothing and medicine, or either, that said plaintiff furnished said children from said time, have been furnished voluntarily and without the knowledge or consent of this defendant, and without any agreement or contract with him or on his part, actual or implied.   Then he further alleges that he has been always ready, able and willing to furnish the necessaries of life for said children, and to furnish them proper nursing, care, clothing, medicine and instruction, and has never neglected in any way his said children.

To this answer plaintiff files a reply, and in that reply he first admits that on or about the 5th day of March, 1890, the defendant took his said children from the residence of the plaintiff, where they were being boarded and cared for by him as set forth in the petition, to the Ursuline Convent.   And now comes the denial: "But plaintiff says that the defendant took said children to said convent without the acquiescence or consent of his wife, Claudia Q. Murphy."   Plaintiff admits that said convent is a Catholic institution—and now comes the denial again: "Plaintiff says that he has no knowledge, and therefore denies, that said convent was a proper place for children of such tender years."   Then, in reference to the allegation made in the answer as to the taking of these children from the convent, after that, he says: "That afterwards, to-wit, on or about April 2nd, 1890, the wife of defendant, said Claudia Q. Murphy, upon going to said convent to visit said children, found them very much depressed in spirits, sick and discontented, and said Claudia Q. Murphy, fearing for their health and believing that if they were kept away from the home such as she and her parents could furnish, the said children were likely to fade away and die, she did, of her own free will and accord, take said children from said convent, and took them back to the residence of plaintiff, where, at the request of said Claudia Q. Murphy

and under the express and implied promises of the defendant, this plaintiff did board, nurse, clothe and otherwise care for said children as set forth in the petition.

"And plaintiff further says that it is not true, and he therefore denies that he ever acted in conjunction with said Claudia Q. Murphy in removing said children from said convent, or had anything to do whatever with said removal; but, on the contrary, the plaintiff had no knowledge of their being taken away until they were brought to his home by said Claudia Q. Murphy."

And further, by way of denial, he says that he denies that said children were unlawfully, fraudulently or by deception of any kind taken from said convent. "He further denies that the nursing, care, clothing and other necessaries furnished by plaintiff to said children were furnished without the knowledge or consent of defendant and without any agreement or contract with him actual or implied; but, on the contrary, this plaintiff says that the defendant had full knowledge of said children being taken by said wife from the convent to the home of this plaintiff, and that they were being nursed, clothed and cared for as stated in the petition. And plaintiff says that the defendant frequently visited said children at his said home, making no objection whatever to their maintenance there, and otherwise ratified the action of his said wife in leaving the said children in the custody of the plaintiff. By reason whereof this plaintiff says that the defendant impliedly promised and agreed with plaintiff to pay him a reasonable and proper compensation for the said care and necessaries furnished to the said children, and is estopped from asserting that he did not so promise and bind himself therefor."

"Further answering, this plaintiff says that it is not true, and he denies that the defendant has been ready and willing (although amply able) to furnish the necessaries of life for the said children, or furnish them with proper nursing, clothing, care, medicines and instruction; but, upon the contrary, defendant has failed, neglected and refused to supply said children with any necessaries of life, or otherwise care for them. And plaintiff says that the defendant ever since the separation from his said wife has neglected in every way to fulfill his duty as a father towards his said children."

Now the allegations made in the petition and denied by the answer, are in issue. The affirmative allegations made in the answer, charging anything upon the plaintiff, and that are denied in the reply, are in issue. The denials in the reply of course make the issues to that extent so far as there are affirmative allegations in the reply; that is, making any charges or claims as against the defendant; there is no necessity for any further pleadings in reference to those, but those you will take as being denied.

And, gentlemen, this case is now to be submitted to you to determine the issues so made in these pleadings filed by the parties, upon the evidence which has been produced before you, and which the court has admitted as evidence in the case, and under the rules of law which I will give you to govern you in your investigations.

There are certain instruments in writing which have been introduced in evidence, and it is my province and duty to give you a construction of these written instruments. Under and by the articles of agreement between Mr. and Mrs. Murphy, dated December, 31st, 1889, both the father and mother agreed thereafter to live separate and apart, but both the father and the mother reserved to themselves and to each of them, all their rights and privileges as parents except and subject to the following qualifications: First, that the said children were to have their home for

the then present with the plaintiff in this case and his wife. Second, the children were never to be permitted to live with or have their home with a step-parent. That is, either with the future wife of the father or the future husband of the wife, if either should ever thereafter again marry. Third, the mother agreed not to remove the children from the care of Mr. and Mrs. Quigley without the consent of the father.

Under this agreement, gentlemen, the father, so far as the children in this case were concerned, had the right to remove the children from the care of the plaintiff and his wife at any time thereafter, when he chose to do so, without the consent of the mother, or of the plaintiff or his wife. As to the duties of the father after having removed them, I will instruct you further on.

The other written paper in evidence is the agreement signed by the plaintiff,—Quigley—dated January 6th, 1890. This agreement was signed only by Mr. Quigley, but, if delivered to the defendant, the children having thereafter been left by the defendant at the home of the plaintiff, so long as he permitted them to remain, without objection, he is liable for the payment of the sum named therein per month for the board and care of said children, and for no greater sum. This agreement does not, however, include the cost of any clothing that might be provided for the children, or that was provided, if any was so provided, if you shall so find during that time; and if you should find from the evidence that the plaintiff did furnish any clothing for them during that time—that is between the time when the children were taken by him and the time when they were taken away from him and taken to the convent by the defendant, but if said clothing was furnished at the request of defendant, or was necessary for said children and was not furnished by defendant; was reasonable, fit and suitable for such children, for the children of other parents in like situation in life and of like financial ability, then the defendant would be liable for the reasonable and fair value of the same.

The burden of proof, gentlemen, is upon the plaintiff to show what, if any, such clothing was provided by him, while the children were with the plaintiff up to the time they were taken from the plaintiff, and what was the fair cash value of the same at the time so provided.

The first matter for your consideration and investigation will be, the extent of the defendant's liability, by reason of the board and care and clothing furnished, if any was furnished, during this time—and I am referring now in all that I say to the time between the period when the children were left with Mr. Quigley and the time when they were taken away to the convent. And to this value when you so find it, interest may be added, at six per cent, from said time to the first day of this term of court, which is the 14th of September, 1896.

And I further say to you as a matter of law, that unless you find that the plaintiff refused, on the request of the defendant, or in some way interfered with the taking of the children from the plaintiff by the defendant by reason of a notice—either verbal or written—whichever you shall find—if you find either—served by the defendant, Murphy, upon the plaintiff, Quigley, or claimed to have been so served, that so long as he allowed or permitted the children thereafter to remain with the plaintiff, his liability, whatever it was before the giving of the notice, would continue. If the plaintiff refused to deliver the children to him at that time, that is, upon his demand, or interfered with his taking of them away, then the time when he so refused or so interposed to prevent their being taken from him by the father would terminate the liability of the defendant to him

Now, gentlemen, you are to determine, under these rules, what amount the plaintiff is entitled to recover against the defendant by reason of the transactions prior to the taking of the children from Quigley by Murphy. And in any event, whatever you shall find that amount to be, the plaintiff will, in any event, in this case be entitled to a verdict at your hands.

Having disposed of this branch of the case, you will then proceed to consider the questions necessary to be determined as to whether or not the defendant is liable to the plaintiff for board, clothing, care or medicines furnished for these children from the time when the children were taken from the convent by the mother and returned to the plaintiff.

No claim can be allowed of the plaintiff while the children were in the convent, but from the time that they were returned up to the time that the mother afterwards took them from Mr. Quigley—which I think is said to have been May 1st, 1894—the question as to the liability of the defendant for what transpired during this time, and the right of the plaintiff to recover for the board, care, clothing and maintenance of these children, is for you to determine, as I say, under certain rules of law and upon the evidence. And, considering these questions—the question of this liability—during that time, you will be required to observe certain rules of law, which I will now give you.

And, first: It is the duty of a father to provide reasonably for the support and maintenance of his minor children, if he be of ability to do so. He is under obligation to do so, both by natural law and the statutes of the state of Ohio. It is provided, by section 3110 of the Revised Statutes of Ohio, that the husband must support himself, his wife and his minor children, out of his property or by his labor; if he is unable to do so, the wife must assist him in so far as she is able. By the terms of this statute the husband is made primarily liable for the support of his minor children, and is bound to do so, out of his property or by his labor, if he is able to do so.

There is a further provision by the statutes of Ohio, known as section 3113. "A husband and wife cannot by any contract with each other alter their legal relations, except that they may agree to an immediate separation, and may make provision for the support of either of them and their children during the separation."

Again, the father being able, is bound by law to support his infant children and to furnish necessary clothing and care, yet the circumstances of the children, the necessity and the proper amount and kind of care, clothing and support to be furnished children, are, under ordinary circumstances, by law left to the sole discretion of the father, subject, however, to the rule that such discretion must not be abused to the injury of the children. If, however, the father, being able, neglects or refuses to provide for his children so as to render it necessary that some other person should so provide or care for them, then the law implies a promise or obligation on the part of the father to pay for the proper amount and kind of care, clothing and support of such minor children.

If you find from the evidence in this case that the children of defendant were placed by him in a convent in this city for education, care and support and that said convent was a proper and suitable place for said children to be and remain in, and that said children were taken from said convent by their mother, against the wish of the defendant; and find further that the plaintiff thereafter furnished board and clothing and care for said children, which wish was known to the plaintiff, and that during the time the plaintiff furnished such board, care and clothing, the defendant had made suitable and proper provision for their care, support and maintenance, and so notified the plaintiff, and requested the plaintiff to deliver them to him in order that he might so provide for them,

and if the plaintiff refused to deliver the children to him, then from such time as he so refused upon such demand, he would have no claim against the defendant for any support, care or maintenance of the children; unless you also find that there was either an expressed contract between the plaintiff and defendant, whereby the defendant promised to pay for such board, care and clothing, or that under the rules which I will give you hereafter, a contract to make such payment may be implied.

Now, in making an application of these rules to the evidence in this case, I will say further to you as a rule of law to govern you:

1. The duty of the defendant here as the father of these children, still rests upon him, and has rested upon him in full and binding force, notwithstanding under the articles of agreement between him and his wife, they during the time that these children were with the plaintiff, were living separate and apart from each other. These children were not and could not be parties to that agreement. It is no matter for inquiry on your part now in this case as to what were the causes of that separation, or by whose fault it was produced, and while the children must of necessity to some extent be affected by the breaking up of the family home, yet it is not the policy of the law to deprive them of their rights to support and maintenance and culture on account of any difficulty or dissension between their parents.

2. In determining whether there has been a proper performance by the father, of his obligation in this case to support, maintan and care for these children, the question as to what was or is for the best interest of the children, must be considered by you. The fundamental principle relative to such matters is to regard the benefit of the infant; to make the welfare of the children paramount to the claims of either parent. And while the discretion is with the father primarily to select the method and the way in which he shall provide for such support and care and maintenance of his children, yet he cannot be permitted in the exercise of such discretion unnecessarily or without reasonable cause so to act as to injure his children in their health, comfort or enjoyment, or future prospect in life.

3. It was the duty of the defendant in this case when these children were removed from the home of the plaintiff and placed in the convent, to provide for their maintenance, support and care under and in accordance with these rules, and it is for you, gentlemen of the jury, to determine from the evidence before you, considered under these rules, whether in placing them in the convent, he did so provide. In determining this question you must consider all the conditions and circumstances under which these children were placed there in so far as they are disclosed in the evidence before you; their ages at the time the defendant placed them in the convent: their health and physical condition and the manner in which they had been accustomed to live; the care which they had before received; the character of the convent so far as the care of such children of similar ages is concerned, its method of treatment of such children— in short, gentlemen, everything disclosed to you in the evidence that would affect the comfort, health and physical well being of the children in the present, and their prospects for happy and useful lives in the future.

The discretion being in the father to select the place where and the proper person who should so provide for his children, the presumption is that the convent was such a place, and the burden is upon the plaintiff to show by a preponderance of the evidence that the provision so made was not under these general rules and under the evidence in this case a proper provision. If you find under these rules that such provision was

not such a proper provision, then these children, being infants of such tender age as not to have the ability or judgment to act for themselves, their mother would have the right to remove them to some proper place and provide for their support and maintenance until the father should thereafter provide proper and suitable maintenance, and support for the children; and for the reasonable expense of so doing the father would be liable to the person who furnished the same at the request of the mother, and such person would not be a volunteer, although bearing no relation whatever to the children.

Now, as you so find under these rules and upon all the evidence before you, will depend the right of the plaintiff to recover for the support and maintenance of the children by reason of their having been placed in his hands by the mother after she took them from the convent.

If however, you shall fail to find that the mother was justified in taking the children from the convent and placing them in the hands of the plaintiff, there is second and still a further inquiry which you would be required to make: It is conceded in the evidence in this case that very soon after the children had been so taken from the convent and placed in the home of the plaintiff, the defendant was notified that she had done so; that within a short time thereafter he visited and saw the children at the home of the plaintiff, and that he saw them thereafter from time to time while they so remained in the home of the plaintiff. Now, gentlemen, if you find from the evidence before you, that he, the defendant Murphy, in this case, knew, or had full means of knowing, of the character of the support and maintenance—of the board and clothing and care—which plaintiff was during this time furnishing to these children, and permitted them, without objection thereafter made or during that time made, to remain in the house of the plaintiff, receiving this care, maintenance and support from the plaintiff without himself providing other proper and suitable maintenance and support for the children, you will be justified in finding an implied promise on his part to pay the fair and reasonable value of the board, clothing and care so furnished by the plaintiff.

In answer to this implied promise, evidence has been given on behalf of the defendant, that the mother has told him, in effect, that she was providing for the support of the children, and that he would not be called upon to make any payment for the same; and evidence has been offered tending to the contrary, but I say to you in reference to this that while you must consider all this evidence, that unless the facts in reference to any such representation made by the mother were brought to the notice of the plaintiff, or he was otherwise so notified, they would not as against him, affect any such implied promise, if any such promise you should find, as being otherwise implied under the rules which I give you.

Now gentlemen, if you fail, upon all the evidence produced before you, all considered, and upon a preponderance of the same—not beyond a reasonable doubt, as in a criminal case, but only by the preponderance of the evidence—fail to find that the defendant is liable, upon either of these grounds that I have stated, to the plaintiff for any board, clothing or care furnished by the plaintiff after the children were returned to him from the convent, then you will be relieved from further consideration of this branch of the case, and you will not find any amount for the support of the children after they were so returned to him from the convent.

If, however, you do find from the evidence before you and under the rules given you, that the plaintiff is entitled to recover for the maintenance, care, board or clothing furnished by plaintiff to these children, after they were returned to him from the convent, then you will proceed to determine the amount that the plaintiff is so entitled to recover. Such amount will not be governed by the agreement of February 6th, 1890,

but will be the fair and reasonable value of the board, care and clothing so furnished by the plaintiff to these children, providing that such board, care and clothing was such as was reasonably suitable and proper for children of their age, considering the situation of life and financial ability of the father. The amount must not exceed such sum as you will find will reasonably and fairly compensate the plaintiff for the maintenance of the children in such situation of life as the children of the defendant should fairly occupy, and it must further not exceed the amount claimed by the plaintiff in his petition; but if you do find any sum so due, you may add interest upon that from the 1st day of May, 1894, to the 14th day of September, 1896, the first day of this term of court.

And now, gentlemen, I only need to remind you, what you all know and have been repeatedly told, as you are all regular jurors, that upon you rests the responsibility of determining the facts in this case upon the evidence before you, paying careful attention to the rules of law which the court gives you. As to the facts, the court expresses no opinion one way or the other.

Most of the witnesses have been upon the witness stand; ycu have seen them and been able to judge of their manner. You are to take into consideration their appearance upon the witness stand, as well as any interest cr feeling they may have in the case. In short, considering all these witnesses, judge for yourself as to the credit to be given to their testimony; and where there may be any difference between them, you will determine calmly and dispassionately, and not allow any feeling to influence you; but calmly and dispassionately determine what are the facts and what is just and right, remembering the verdict that you render is upon your oath and conscience.

The jury brought in a verdict in the case for the plaintiff in the sum of $1135.74.

Hurd, Brumback & Thatcher, Attorneys for plaintiff.
Parks & Van Campen, Attorneys for defendant.